Moncure, P.,
delivered the opinion of the court.
The court is of opinion, that the agreement of November, 1865, filed with the original bill in this case as exhibit “A,” was a legal and valid agreement when entered into by the parties thereto.
Hall Neilson, formerly a resident and merchant of the city of Richmond, removed to the city of Washington in the year 1852, and continued to reside there until his death, in the year 1860. He left a widow, Mary Archer, a daughter by a former marriage, Edmonia, and three children by his last marriage, Mary Tuly, Thomas H., and *589 Fanny Neilson. After his death his family, consisting *of his widow and his children by her, removed to the city of Philadelphia. Hall Neilson was supposed to be entitled at his death to certain real estate in and near Richmond, and after the late war between the United States and the Confederate States, to-wit: in 1865, his widow determined to go to Richmond and inquire into and attend to the matter. Her son, Thomas 11. Neilson, it seems, was then living in Albany, where he was studying law, so that she could not get him to go with her, if he was old enough for the purpose. He was over twenty-one years of age. She therefore made an arrangement with the appellee, General Samuel M. Bowman, then, and probably still, a resident of the state of New York, who had been a friend of her husband, and was still a friend of his family, to go with her and aid her in obtaining the information she desired in regard to the said estate in and near Richmond. They accordingly, went to Richmond and made inquiry and obtained information as aforesaid. After their return to their homes, the agreement aforesaid was entered into between the said widow and the said children by her of the first part, and the said Bowman of the second part. Jt recites that, “whereas said parties of the first part have purchased of Kdmonia Neil-son all her right, &c., both as creditor and heir at law, in the estate of the said Hall Neilson, deceased, and are now desirous of closing out the business of the estate as soon as possible; -and whereas so much of said estate as lies in the state of Virginia is situated, &c., in the city of Richmond and the county adjacent, and consists of city lots, lands, water privileges, &c., all of doubtful and uncertain value, and more or less beclouded by adverse claims, tax titles, &c.; and whereas said party of the second part is willing to undertake the sole management and control of said portion of said estate.” The said agreement *then proceeds thus: “Now, it is agreed as follows, to-wit: that the said party of the second part will, and hereby so agrees, undertake the management and control of all the property and interests of every kind and description in the state of Virginia belonging to the said estate of the said Hall Neilson, deceased; that he will advance and pay all taxes now due and unpaid on the same; that he will, as soon as possible, get said property in condition for sale and cause it to be sold, and keep an accurate account of the proceeds thereof and pay over the same as follows:
“First. Five thousand dollars to Fdmonia Neilson, so as to take up and cancel the obligations of the said parties of the first part, given by them for her interest as heir in the estate aforesaid.
“Second. Five thousand dollars each to Mary Tuly Neilson Jackson, Thomas Hall Neilson and Fanny Neilson, respectively, or in that proportion, if the proceeds shall amount to less than the sum of $15,000, after paying the above named sum to said F,dmonia Neilson. And it is further agreed by and between all the parties hereto that said party of the second part shall have for his personal services in the premises, and for advances made and to be made for the benefit of such estate, all the benefits, proceeds and residue of such estate, after paying the sums aforesaid; but he is not to be held liable to pay said sums faster than he can realize from sales of the property aforesaid.
“It is contemplated by all the parties hereto that said party of the second part will give the business his personal and prompt attention; that he will cause suits to be instituted in partition for the purpose of closing up the estate, and in case of sales by order or decree of court, that he will bid in the property and hold it in his own name, if he shall deem it for the best interests of the *party of the first part to do so, and that in all such proceedings he is to have the friendly co-operation and aid of the said parties of the first part. And Augustus Jackson having intermarried with the said Mary Tuly Neilson, and concurring in this agreement, joins in its execution.”
The said agreement was then signed and sealed by all the parties thereto, including the said Augustus Jackson.
The agreement was speculative in its nature, and upon a subject about which none of the parties (all of whom were non-residents of the State) had much, if any, information. It was supposed to embrace some valuable land, which turned out afterwards not to be a part of it. The party of the second part, General Bowman, appears to have been a good lawyer and well informed man of business. The parties of the first part, the widow and heirs of Hall Neilson, were all ladies except one, who was in a distant state pursuing his legal education. These ladies had the utmost confidence in General Bowman; did, without hesitation, whatever he required them to do in regard to the subject of the agreement, and seemed to be ready to do whatever else he might have required in that regard. The result of the agreement might have inured very greatly to the advantage of General Bowman, and to the corresponding disadvantage of Hall Neilson’s heirs, while it could not have occasioned any material loss to him. On the other hand, the three heirs of Hall Neilson, who were children of his widow, could, by possibility derive from the subject no more than five thousand dollars each at some future day, and would derive not so much, if the proceeds of the subject out of which the payments to them was to be made should turn out to be insufficient to pay the full amounts. Still the parties to the agreement were all sui juris and legally competent to contract with each *other. There was no fiduciary relation between them when they entered into the said agreement; and it was not obtained by any fraud on the part of General Bowman, nor made under any mistake on the part of the widow and heirs of Hall Neilson, the parties *590 of the first part. The agreement, therefore, however speculative, or even unequal it may have been, was legal and valid when entered into by the parties the'reto.
But the court is further of opinion, that the subsequent agreement between the same parties, entered into in December, 1869, or January, 1870, to change the said original agreement, so as to increase the compensation to which the said Bowman was to be entitled under the same for his attention to the business therein mentioned, and 'to diminish the amounts thereby stipulated to be paid to Mary Tuly Neilson Jackson, Thomas H. Neilson, and Fanny Neilson, respectively, out of the proceeds of the sale of the estate therein mentioned, was an illegal and invalid agreement.
Although no fiduciary relation existed between the said Bowman and the said parties of the first part of the said original agreement, or any of them, at the time it was entered into; yet such a relation was thereby created and thereafter existed, and continued to exist when the said subsequent agreement was entered into between the said parties to the same.
The fiduciary relation so created and existing was that of principal and agent, and trustee and cestui que trust. That such a relation was so created and so existed between' the said parties, is plainly apparent on the face of the said original agreement, the terms of which have already been set out in this opinion, and need not be here again repeated. In 1868, at the request of the agent, two deeds were executed by his principal, conveying to him the property which was the subject of the *agency, to enable the agent to dispose of it more readily and conveniently. There was no declaration of trust on the face of either of these deeds; but the trusts on which they were made were well understood and agreed between the parties, and the relation of trustee and cestui que trust clearly existed between them under the said deeds.
The duties of an agent or trustee arising from such a relation, and the onus which rests upon him to show that he is entitled to the benefit of any agreement made by him with his principal or cestui que trust, are strongly set forth in the elementary books and adjudged cases on the subject.' Some of these will now be noiced.
In l Story’s Equity Jurisprudence, §§ 307-323 inclusive, edition of 1866, by Red-field, the subject of constructive ■ fraud arising from some confidential or fiduciary relation between parties, is fully considered, and a great many cases are referred to in the notes to those sections. After treating of various instances of such a relation, thg learned author of that work, in section 315, proceeds thus: “In the next place, the relation of principal and agent. This is affected by the same considerations as the preceding, founded upon the same enlightened policy. In all cases of this sort, the principal contracts for the aid and benefit of the skill and judgment of the agent;' and the habitual confidence reposed in the latter makes all his acts and statements possess a commanding influence over the former. Indeed, in such cases the agent too often so entirely misleads the judgment of his principal that, while he is seeking his own peculiar advantage, he seems but consulting, the advantage and interests of his principal.” After making á quotation from Cicero, the author thus further proceeds: “It is therefore for the common security of all mankind that gifts procured by agents, and purchases made by them *from their principals, should be scrutinized with a close and vigilant suspicion. And, indeed, considering the abuses which may attend any dealings of this sort between principals and agents, a doubt has been expressed whether it would not have been wiser for the law in all cases to have prohibited them, since there must always be a conflict between duty and interest on such occasions. Be this as it may, it is very certain that agents are not permitted to become secret vendors or purchasers of property which they are authorized to buy or sell for their principal; or, by abusing their confidence, to acquire unreasonable gifts or advantages; or, indeed, to deal validity with their principals in any case, except where there is the most entire good faith, and a full disclosure of all facts and circumstances, and an absence of all undue influence, advantage, or'imposition.”
And in section 321, the same author proceeds thus: “In the next place with regard to the relation of trustee and cestui que trust. In this class of cases, the same principles govern, as in cases of guardian and ward, with at least as much enlarged liberality of application, and upon grounds quite as comprehensive. Indeed, the cases are usually treated as if they were identical. A trustee is never permitted to partake of the bounty of the party for whom he acts, except under circumstances which would make the same valid, if it were a case of guardianship. A trustee cannot purchase of his cestui que trust, unless under like circumstances; or, to use the expressive language of an eminent judge, a trustee may purchase of his cestui que trust, provided there is a distinct and clear contract, ascertained to be such, after a jealous and scrupulous examination of all the circumstances, and it is clear that the cestui que trust intended that the trustee should buy, and there is no fraud, no concealment, and no advantage taken by the trustee of information acquired by him as ^trustee. But it is difficult to make out such a case where the exception is taken, especially when there is any inadequacy of price, or any inequality in the bargain. And, therefor, if a trustee, though strictly honest, should buy for himself an estate of his cestui que trust, and then should'sell it for more, according to the rules of a court of equity, from general policy and not from any peculiar imputation of fraud, he would be held still to remain a *591 trustee to all intents and purposes, and not to be permitted to sell to or for himself.”
In the cases of Fox v. Machreth and Pitt v. Machreth, and the copious notes to those cases reported in Reading Cases of Equity, vol. 1, part 1, edition of 1876, pp. (top) 188-264, marginal 115-177, will be found a statement of all the principles of law and equity arising from the fiduciary relations before referred to; and it is unnecessary, and would be very tedious, to attempt to repeat them in detail in this opinion.
There is, no doubt, much conflict in the vast multitude of cases on the subject, and it is impossible to reconcile them all. But without making the vain attempt to do so, it is sufficient to say we are of opinion that, according to the well settled principles of law and equity on the subject, the subsequent agreement before referred to, made to modify and change the original agreement aforesaid, wa's illegal and invalid.
There are two grounds, if no other, upon each of which we think the subsequent agreement was illegal and invalid.
First. The agent, Bowman, failed to inform his principals of all the facts within his knowledge, material to enable them to determine discreetly whether they would agree to the proposed modification and change of the original agreement. It was certainly the duty of the agent to give such information to his principals. It is ^certain that he did not do so; and it is very certain that if he had done so, they would not have agreed to the proposed modification and change. The inevitable result of all this is, that the new or subsequent agreement was illegal and invalid.
Mrs. Neilson, in her deposition, says that the reasons urged by General Bowman for the purpose of inducing a modification of the contract of 1865 were, that some of the roperty represented by Mr. Radd (to whom e had been referred by her for information on the subject) to belong to the Neilson estate, did not belong to it; that the property had not turned out as valuable as he supposed it would, and that he would lose money and be subjected to loss unless that contract was modified.
It is not pretended that any fraud or misrepresentation was practiced on General Bowman by the other parties to the original contract, or any of them, to induce him to enter into it. They knew little or nothing about the property when that contract was made. General Bowman had examined it and made inquiries about it. The contract was proposed and drawn by himself, and accepted by the other parties. It was a contract of speculation in its nature, whereby he might, according to the result, make little or nothing, or a great deal; while the other parties could not realize more than a certain sum, and might not realize so much, or even anything. Had the result been favorable to the agent beyond, his highest expectations, he would have been entitled to the full benefit of it, and the other parties could not, and doubtless would not, have complained. Supposing the result to have been different, and that the property had yielded enough to pay the utmost amount to which the other parties could have been entitled under the contract, but not a cent of surplus for General Bowman, he would have had no just or legal cause of complaint. The fact *that some lots which were supposed to constitute a part of the property when the contract was made, were not in fact a part of it, and that thus the advantage of the said contract to him was not so great as it would otherwise have been, can make no difference. His appeal to the other parties for a change of the contract was, therefore, addressed solely to their generosity. They were grateful to him for his kindness to them, and generously agreed to make the proposed change, in order that he might be saved from an apprehended loss.
Under such circumstances, uberrima lides ought to have been practiced by the agenL. He should have made the fairest and fullest disclosure to his principals, to put them in possession of all the knowledge necessary to enable them to understand his situation in the matter. Especially he ought to have laid before them the contract whiclb he had already made for the sale of the entire subject of his agency to E. S. Hamlin. Had he done so, it would at once have appeared to them what he would make by his agency, supposing the contract with Hamlin to be faithfully performed. Instead of doing so, he gave them little or no information on the subject. The counsel for the principals contend that according to the evidence in the record, the amount of the purchase money of the property sold by the agent, Bowman, to Hamlin, was $39,000, subject to little, if any, deduction, while the,counsel for the agent contends that the amount would be much less. If it be anything like that amount, or even $20,000 or $25,000, it would afford a large amount of compensation and profit to the agent under his original agreement; and certain it is, that information of that fact would have prevented the principals from agreeing to any modification or change of that agreement.
*One of the items in the account in which the consideration of the sale by Bowman to Hamlin is estimated at $39,000, as aforesaid, is the sum of $15,000 for two tracts of land in Warwick county, near Newport News, conveyed by Hamlin to Mrs. E. A. Be man, wife of General Bowman, by deed dated November 10th, 1869. In that deed the consideration expressed is that sum, which shows that it was the estimated value of the land in the transaction between Bowman and Hamlin in regard to the sale by the former to the latter of the Neilson property. It is true that Mrs. Neilson testifies that Bowman,, in a conversation with her, said he would have to take for his ad-„ vanees a little farm in Virginia, worth some four or five thousand dollars, which was, no doubt, the land near Newport News, before referred to. It is also true that William F. *592 Giddings, a lawyer residing at Newport News and a witness for the plaintiffs, testifies that he would have considered six thousand dollars as the fair value of the land at the time of its conveyance by Hamlin to Mrs. Bowman, and more than it would then have sold for in cash; and other witnesses testify that its value was even less. On the other hand, it is true that in January, 1873, Bowman sold and conveyed the same land, including fifty acres, and it seems another small parcel of land, to Alexander B. Green, for $17,500. And it is also true that Bowman (who lived on the land near Newport News called the Fitchett farm, conveyed to him cr rathe'r to his wife by Hamlin, as aforesaid,' from about the time of such conveyance until about the time of the said sale to Green) stated in the presence of the witness, Giddings, in the fall of 1871, that he made clear by the transaction with Hamlin the Fitchett farm and ten thousand dollars besides.
It was a breach of trust in Bowman to have the Fitchett farm conveyed to his wife by Hamlin, and it ^remained a part of the trust subject after such conveyance, and until it was sold to Green. So that the purchase money to be paid by Green constituted a part of the Neilson trust fund for the purposes of the trust. According to the terms of the original agreement the agent, Bowman,- was entitled to nothing out of the proceeds of the sale of the subject of the agency (except, perhaps, the necessary expenses of the agency) until the heirs of Hall Neilson should have received the amounts stipulated to be paid to them respectively out of the said proceeds of sale.
Secondly. By the said original agreement the agent, Bowman expressly stipulated that he would, “as soon as possible, get said property in condition for sale, and cause it to be sold, and keejf an accurate account of the proceeds thereof, and pay over the same as follows:” and then follows the directions for the payments agreed to be made, first, to Edmonia Neilson, and secondly, to the children of Mrs. Neilson, respectively, as aforesaid, and an agreement by and between all the parties that the said Bowman shall have for his personal services in the premises, and for advances made and to be made for the benefit of such estate, all the residue thereof, after paying the sums aforesaid, &c.
By agreement made the 14th day of November, 1869, between said Bowman and Hamlin (marked “Exhibit D,” and filed with the bill), said Bowman sold to said Hamlin all his interest in the property known as the Spring Hill property, lying, &c., which said Bowman purchased at commissioner’s sale, March, 1868, the interest of said Bowman being two-thirds thereof; also the property lying in James river known as the “Neilson property,” &c.; and 'the said Bowman agreed to convey said property, by good warranty deed, on the *said Hamlin performing or being ready to perform his agreements thereinafter mentioned.
The said Hamlin, on his part, agreed, within ten days from date, to convey to said Bowman and his heirs, by good warranty deed, a farm then owned by him on James river, in the county of Warwick, known as the Fitchett farm, and containing, &c., 350 acres of land; also that he would procure to be conveyed by like deed to said Bowman, as soon as title could be obtained by order of court, &c., a strip of land supposed to be fifty-five acres, running through the said Fitchett farm.
On the delivery of the said deed for the Fitchett place by said Hamlin, said Bowman was to deliver the deed for the lands therein agreed to be conveyed to .said Hamlin; and said Hamlin was to execute a note and mortgage on the Neilson property for $13,000, bearing interest at six per cent., at such long time as said Bowman could negotiate for with Neilson’s heirs; also note and mortgage on the Spring Hill property for $11,000, and interest at six per cent., and payable $8,000 in annual payments of $3,000 each, with interest, and the balance in five years from date; also said Hamlin agreed to pay said Bowman on demand in personal property which he owned at Newport News, $1,000.
The said1 agreement was made before there was any change or modification of the original agreement aforesaid; though, no doubt, after said Bowman had formed an intention to apply for such change, and the stipulation therein contained, that said Bowman would negotiate with Neilson’s heirs for such long credit as he could obtain from them for the $13,000 of the purchase money of the property sold to Hamlin, which he expected and intended to be paid to the said heirs, or rather three of them, was certainly a stipulation to violate his duty as agent; which duty required him to do the best he could *for his principals. They were, as he Well knew, in need of the money which they were entitled to receive under the agreement as soon as it could be made by their agent, who expressly promised in the said original agreement “ that he would, as soon as possible, get said property in condition for sale, and cause it to be sold, and keep - an accurate-account of the proceeds thereof, and pay over the samé” to the heirs of Neilson, to the extent of the amounts agreed to be paid to them respectively, before anything could be retained by him on account of his compensation as agent or anything else. And yet he promises, in his agreement with Hamlin, to endeavor to obtain from the heirs of Neilson their consent to give to Hamlin a long credit on a note and mortgage on the Neilson property for $13,000, bearing interest at six per cent., which he agreed to accept from Hamlin in part of the purchase money of said property, and which he expected and intended to assign to the said heirs (except Edmonia Neilson), in payment of that would be due to them out of the said purchase money. Instead of that, his plain duty as agent of the said heirs was to obtain for them as soon as possible the *593 portion of the said money to which they would become entitled. But he preferred to consult his own interest and the interest of Hamlin to that of his principals in this matter. And in doing so, he violated a plain rule of law and equity which applies to persons standing in the fiduciary relations to each other which existed between him and his principals as aforesaid.
Other reasons might be assigned, but surely enough has already been said to show that the subsequent agreement was illegal and invalid.
The court is further of opinion, that the said subsequent agreement being illegal and invalid, the said original agreement remains in full force and effect as if *the subsequent agreement had never been entered into. The latter agreement is altogether illegal and invalid, and therefore cannot have the effect of invalidating the former agreement.
The court is therefore of opinion, that the rights of the parties to this suit must be adjusted and administered according to the said original agreement, unaffected by the said subsequent agreement or anything done under it, except as hereinafter mentioned. According to the said original agreement, the said agent, Bowman, became indebted to each of his said principals, Mary Tuly Neilson Jackson, Thomas Hall Neilson, and Nanny Neilson, in the principal sum of five thousand dollars, which should bear interest from the 10th day of November, 1869, until paid, that being the day from which Hamlin was to pay interest on the bonds given by him to said Bowman for the balance of the purchase money of the property sold by the latter to the former as aforesaid, after deducting fifteen thousand dollars, the price of the land near Newport News conveyed by Hamlin to Mrs. Bowman, by deed dated on the said 10th day of November, 1869, and one thousand dollars, the price of the personal property on said land received by said Bowman from said Hamlin as aforesaid. The said three sums of five thousand dollars, amounting together to the sum of fifteen thousand dollars, are subject to no abatement on account of any inadequacy of the proceeds of sale of the property in the state of Virginia, belonging to the estate of said Hall Neilson and sold by said Bowman; as the said proceeds, after paying five thousand dollars to Edmonia Neilson, as provided for in the said original agreement, greatly exceed the said sum of fifteen thousand dollars.
But the said sum of fifteen thousand dollars is subject to a credit for the sum of twelve thousand dollars, amount of the notes of the said Hamlin, dated November 10th, *1869, and bearing interest at six per centum, secured by deed of trust on the Spring Hill property, which notes were endorsed by the said Bowman to Mary Tuly Neilson Jackson, Thomas H. Neilson, and Nanny Neilson Wells, and to the benefit of which said notes and of the liability of the endorser thereon, and of the deed of trust executed for their security, the said Mary Tuly Neilson Jackson, Thomas Hall Neilson, and Fanny Neilson (now Fanny Neilson Wells, are entitled on account and in part of the said three sums of five thousand dollars due to them, respectively, under the said original agreement, making together the principal sum of fifteen thousand dollars, with interest from the 10th day of November, 1869, as aforesaid. After applying the said credit, the balance of the principal remaining due of the said sum of fifteen thousand dollars is three thousand dollars, which should bear interest from the said 10th day of November, 1869.
The said Bowman, or the trust fund with which he is chargeable, or which came to his hands as agent as aforesaid, is further indebted to the same parties in the sum of twelve hundred and fifty dollars, with interest thereon from the 30th day of Novem-j ber, 1871, till payment, that being the sum ■ paid, on or about that day, to Major Page, attorney of the said Bowman, out of interest then due on the said notes of Hamlin, endorsed by Bowman, to the said parties, and being one-half of the principal of the last moiety of the sum of five thousand dollars payable to Edmonia Neilson under the original agreement aforesaid, out of the estate of Hall Neilson in the hands of said Bowman as aforesaid.
There is, therefore, now due to the said parties, over and above what is due to them on the said notes of said Hamlin for twelve thousand dollars, secured by deed of trust and endorsed to them by said Bowman as aforesaid, *the sum of four thousand two hundred and fifty dollars, with interest on three thousand dollars, part thereof, from the 10th day of November, 1869, till payment, and on twelve hundred and fifty dollars, the residue thereof, from the 30th day of November, 1871, till payment; for which the said Bowman is personally liable, he having actually received more money arising from the trust estate created by the said original agreement and applicable under the same to the payment of said principal and interest so due, than is sufficient for that purpose, and for which the trust estate created by the original agreement is liable; and especially the two notes of said Hamlin to said Bowman, one for $2,000 due January 1st, 1874, with interest, and the other for $3,000, due January 1st, 1875, with interest, enjoined by an order made in this cause by the judge of the circuit court of Warwick county on the 25th day of February, 1873; and also the bonds of the defendant, A. B. Green, to said Bowman, given for the purchase of certain lands in Warwick county, enjoined by another order made in this cause by the judge of the circuit court of Elizabeth City county (to which the cause had been removed), on the 21st day of June, 1873. | The said two injunctions c*aght to remain in force to secure the payment and until I full payment of the said sum of four. thousand two hundred and fifty dollars, with interest as aforesaid, still due to the said Mary Tuly Neilson Jackson, Thomas H. *594 Neilson and Fanny Neilson Wells, as aforesaid.
The court is therefore of opinion that the decree appealed from in this case is erroneous, and ought to be reversed with costs, and the cause remanded to the court below to be further proceeded in to a final decree, in conformity with the foregoing opinion.
In the foregoing opinion we have not noticed an objection, taken for the first time in the appellate court in the sprinted argument of the learned counsel for the appellees, that the appellants, Mary A. Neilson and Thomas H. Neilson were incompetent witnesses, and that their depositions ought to be disregarded by the appellate court, even though no such objection was taken in the court below; and the case of Statham & als. v. Ferguson’s adm’r & als., 25 Gratt. 28, was cited in support of that view. Hord’s adm’r v. Colbert & als., decided by this court in January, 1877, 28 Gratt. 49, is a complete answer to that objection. It was there held that the plaintiff having cross-examined C. on all the issues in. the cause, that was a -yvaiver of the objection to his competency, and it cannot afterwards be made, even in the court below. In this case the appellee Bowman, who, by his counsel, now for the first time, in the appellate court, objects to the competency of the witnesses, Mary A. and Thomas H. Neilson, made no such objection at any time in the court below, but on the contrary he gave to each of them a long and' close cross-examination. He thereby waived his right to object to the competency of the said witnesses, according to the decision of this court last referred to.
In the case in 25 Gratt. 28, supra, when the plaintiff was introduced as a witness in the case in the court below, and before her examination was commenced, an exception was taken and written at the head of the deposition in these words: “Defendants, by counsel, except to the taking of the deposition of Mrs. Mary Ann Ferguson, the plaintiff in this cause, and to the reading of the same, on the ground that she is incompetent to testify on her own behalf, being a party to the contract, the.validity of which is in controversy in this suit.” It does not appear from the report of the case whether she was cross-examined by the defendants or not. But even if she was, any inference from that fact of an intention to'waive objection to her competency as a witness was conclusively repelled by *the express exception to such competency written at the head of her deposition as aforesaid.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the agreement dated the — day of November, 1865, between the widow and !heirs-at-law of Hall Neilson, deceased, viz: Mary A. Neilson, Mary Tuly Neilson. Jackson, Thomas Hall Neilson and Fannie Neilson, parties of the first part, and Samuel M. Bowman, of New York, party of the second part, executed also by Augustus Jackson, husband of the said Mary Tuly Neilson Jackson, and filed with the original' bill in this case as exhibit “A,” was a legal and valid agreement when entered into by the parties thereto.
But the court is further of opinion, that the subsequent agreement between the same parties, entered into in December, 1869, or January, 1870, to change the said original agreement, so as to increase the compensation to which the said Bowman was to be entitled under the same for his attention to the business therein mentioned, and to diminish the amounts thereby stipulated to be paid to said Mary Tuly Neilson Jackson, Thomas H. Neilson and Fanny Neilson respectively, out of the proceeds of the sale, of the estate therein mentioned, was an illegal and invalid agreement.
And the court is further of opinion, that the said subsequent agreement being illegal and invalid, the said original agreement remains in full force and effect as if the subsequent agreement had never been entered into. The latter agreement is altogether illegal and invalid, and therefore cannot have the effect of invalidating the former agreement.
*The court is therefore of opinion, that the rights of the said parties must be adjusted and administered according to the said' original agreement, -unaffected by the said subsequent agreement, or anything done under it, except as hereinafter mentioned.
According to the said original agreement, the said Bowman became indebted to each of his said principals, Mary Tuly Neilson Jackson, Thomas Hall Neilson, and Fanny Neilson, in the principal sum of five thousand dollars, which should bear interest from the 10th day of November, 1869, until paid, that being the day from which E. S. Hamlin was to pay interest on the bonds given by him to said Bowman for the balance of the purchase money of the property sold by the latter to the former as mentioned in the record, after deducting fifteen thousand dollars, the price of the land near Newport News conveyed by said Hamlin to Mrs. Bowman by deed dated the said 10th day of November, 1869, and one thousand dollars, the price of the personal property on said land received by said Bowman from said Harn'm. The said three sums of five thour -nd dollars, amounting together to the sum of fifteen thousand dollars, and subject to no abatement on account of any inadequacy of the proceeds of sale of the property in the state of Virginia, belonging to the estate of said Hall Neilson and sold by said Bowman, as the said proceeds, after paying five thousand dollars to Edmonia Neilson, as provided for in the said original agreement, greatlv exceed the said sum of fifteen thousand dollars.
But the said sum of fifteen thousand dollars is subject to a credit for the sum of twelve thousand dollars, amount of the notes of said Hamlin, dated November 10th, *595 1869, and bearing interest at six per centum, secured by deed of trust on the Spring Hill property, which notes were en- : dorsed by the said Bowman to said ' *Mary Tuly Neilson Jackson, Thomas * H. Neilson, and Fanny Neilson, then j the wife of C. J. S- Wells, and to the ben- ¡ efit of which said notes and of the liability i of the endorser thereon, and of the deed of j trust executed for their security, the said , endorsees are entitled, on account and in part of the said three sums of five thousand j dollars due to them, respectively, under , the said original agreement, making to-1 gether the principal sum of fifteen thousand dollars, with interest from the 10th day of November, 1869, as aforesaid. After applying the said credit, the balance of the principal remaining due of the said sum of fifteen thousand dollars is three thousand dollars, which should bear interest from the said 10th day of November, 1869.
The said Bowman and the trust fund with which he is chargeable, or which came to his hands as agent as aforesaid, are further indebted to the same parties in the sum of twelve hundred and fifty dollars, with interest thereon from the 30th clay of November, 1871, till payment, that being the sum paid, on or about that day, to Major Page, attorney of the said Bowman, out of the Í interest then due on the said notes of Hamlin, endorsed by Bowman, to the said parties, and being one-half of the principal of the last moiety of the sum of five thousand dollars payable to Edmonia Neilson, under the original agreement aforesaid, out of the estate of Hall Neilson in the hands of said Bowman as aforesaid.
There is, therefore, now due to the said parties, over and above what is due to them on the said notes of said Hamlin for twelve thousand dollars secured by deed of trust and endorsed to them by said Bowman as aforesaid, four thousand two hundred and fifty dollars, with interest on three thousand dollars, part tiaereoí, irom the 10th day of November, 1869, till payment, and on twelve hundred and fifty dollars, the residue thereof *from the 30th day of November, 1871, till payment; for which the said Bowman is personally liable, he having actually received more money arising from the trust estate created by the said original agreement, and applicable under said agreement to the payment of said principal and interest so due, than is sufficient for that purpose, and for which the residue of the said trust estate, the proceeds of which have not yet been actually received by him, is also liable; and especially the two notes of said Hamlin to said Bowman, one for $2,000, due January 1st, 1874, with interest, and the other for $3,000, due January 1st, 1875, with interest, enjoined by an order made in this cause by the judge of the circuit court of Warwick county on the 25th day of February, 1873; and also the bonds of the defendant, A. B. Green, to said Bowman, given for the purchase of certain lands in Warwick county, enjoined by another order made in this cause by the judge of the circuit court of Elizabeth City county (to which the cause had been removed), on the 21st day of June, 1873; which said two injunctions ought to continue and remain in full force, to secure the payment, and until payment, of the said sum of four thousand two hundred and fifty dollars with interest as aforesaid, still due to the said Mary Tuly Neilson Jackson,, Thomas H. Neilson and Fanny Neilson Wells, as aforesaid.
The court is therefore of opinion, that the decree appealed from in this case is erroneous; and it is decreed and ordered that the same be reversed and annulled, and that the appellee, Samuel M. Bowman, pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here; and that for the payment of the said costs, as well as of the costs by the said appellants expended, and which may by them be hereafter expended, in the prosecution of this suit *in the court below, the said residue of the said trust estate shall also be liable.
And it is further decreed and ordered, that the cause be remanded to the said circuit court of Elizabeth City county for further proceedings to be had therein to a final decree, in conformity with the foregoing opinion and decree; which is ordered to be certified to the clerk of the circuit court of Elizabeth City county.
Decree reversed.